**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| PERCIO ANTONIO REYNOSO | : | |
| | : | |
| vs. | : | C.A. No. 04-513-ML |
| | : | |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM AND ORDER**

Mary M. Lisi, United States District Judge.

Percio Antonio Reynoso has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("motion to vacate"). For the reasons stated below, that motion is denied.

BACKGROUND AND TRAVEL

The instant motion to vacate stems from Reynoso's conviction and sentence for conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of cocaine and for possession with intent to distribute the same amount of cocaine, both in violation of 21 U.S.C. §§ 841 and 846.

On March 29, 2001, Reynoso was arrested by Drug Enforcement Agency (DEA) agents after Reynoso's co-conspirator, Benjamin Valera, sold one kilogram of cocaine to a DEA informant at Valera's health food store. The arrest culminated a several-week surveillance by DEA agents of Valera, who was suspected of drug dealing. As part of that surveillance, DEA agents had recorded a conversation three days earlier, on March 26, 2001, between Valera and the DEA informant, in which Valera had bragged about other drug deals in which he was involved and that he was owed some $150,000 by his drug customers.

Upon arrest, DEA agents detained Valera, Reynoso and a third individual, Maurice Fermin, at the store. When questioned, Valera indicated that Reynoso had supplied the cocaine. A DEA agent read Reynoso his Miranda rights in Spanish, although Reynoso stated that he understood English, and then questioned Reynoso. (See Transcript of Jury Trial conducted on October 15, 2001 ("10/15/01 Trial Tr.") at 57-59, 151-156, 177-181.) Reynoso initially denied supplying Valera the cocaine in question and also denied owning a vehicle parked near the store. Upon being confronted with the results of a vehicle check showing that the license plates were registered to Reynoso, he admitted that the vehicle was his. After receiving permission to search the vehicle, the agents found 110 grams of cocaine in Reynoso's car. During a subsequent search of the store pursuant to a search warrant, DEA agents discovered 990 grams of cocaine. After further questioning, Reynoso admitted that he had obtained the kilogram of cocaine from a person named "Manuel," whom he then attempted unsuccessfully to reach. (See 10/16/01 Trial Tr. at 6-13, 34-38, 106-111.)

After Reynoso and Valera were brought to the DEA office in Warwick, Miranda warnings were again provided to them, this time in English. A DEA agent then took a statement from Reynoso. Reynoso initially refused to sign the statement and was told he did not have to sign. However, after speaking with Valera, who urged Reynoso to take responsibility, Reynoso agreed to sign the statement. The statement was again read to him and then given to him before he signed it in the presence of DEA agents. The document stated that Reynoso was read his Miranda rights; that he consented to the search of his vehicle; that the cocaine found in the vehicle was his; that he had delivered one kilogram of cocaine to Valera for distribution; and that he obtained the cocaine from an individual named Manuel, to whom he owed $20,000 for the

drugs. (See 10/15/01 Trial Tr. at 59-62, 158-163; 10/16/01 Trial Tr. at 119-120, 144-162.)

Reynoso was subsequently charged with one count of conspiring to distribute and to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and one count of distributing and possessing with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).[1]

Prior to trial, Reynoso, through his retained counsel, Attorney David Cicilline, moved to suppress the signed statement and the cocaine seized from Reynoso's vehicle. After a two-day hearing, the motion was denied. Reynoso, through counsel, subsequently filed a motion to dismiss the superseding indictment, see note 1, supra, which motion was also denied.

At trial, Attorney Cicilline told the jury in his opening statement that they would learn about how Valera bragged to the DEA informant in a recorded conversation about his drug trafficking, stating "You'll hear all of that." (10/15/2001Trial Tr. 28. See note 6, infra.) Although Attorney Cicilline was unsuccessful in having the tape recording admitted into evidence due to his failure to submit a transcript of the recorded testimony, he extensively cross-examined Valera, who testified as a cooperating witness for the Government, concerning both his testimony and his agreement to cooperate with the Government. (Id. at 73-78.) In addition, after being permitted to refresh his memory by listening to the tape recording of his March 26, 2001 conversation with the DEA informant, Valera admitted that he had bragged to the DEA informant that he had $150,000 of drugs on the street and was owed $28,000. (Id. at 79-80).

Also at trial, Reynoso testified that he was not given Miranda warnings, that the 110

---

[1] An initial indictment charged Reynoso with one count of possession with intent to distribute over 500 grams of cocaine. A superseding indictment subsequently charged him with this offense and with conspiracy to distribute over 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(b)(1) and 846.

grams of cocaine found in his car was for his personal use only and that he had nothing to do with the drugs found at the store and did not tell Agent McCormack that he owed Manuel $20,000. He further testified that the statement he signed was not the result of his interview but was prepared in advance by the DEA agent, that he had not read the statement and that he only signed it because he thought it was limited to the cocaine in his car. (See 10/17/01 Trial Tr. 13-14, 16, 21, 24-25, 39-41, 44, 48-49).

The jury found Reynoso guilty on both counts on October 19, 2001.

Prior to sentencing, Attorney Cicilline moved to withdraw, in part due to a letter submitted by Reynoso to this Court alleging that Cicilline had a conflict of interest involving Valera's attorney. The Court did not find that any conflict existed, but in view of the breakdown in the attorney-client relationship, granted Cicilline's motion to withdraw, see generally Transcript of Hearing conducted on January 22, 2002 ("1/22/02 Hearing Tr."), and appointed new counsel, Attorney Albert B. West, to represent Reynoso for sentencing.

At the sentencing hearing on February 25, 2002, this Court found Reynoso responsible for 2.87 kilograms of cocaine and upwardly adjusted his base offense level under the Sentencing Guidelines by two levels for obstruction of justice, in view of his perjurious testimony at trial. See Transcript of Sentencing Hearing conducted on February 25, 2002 ("2/25/02" Sent. Tr.") at 9, 18-21. Reynoso was sentenced to 109 months of imprisonment, followed by supervised release for five years. Upon completion of his incarceration, Reynoso was to be surrendered to the INS for deportation proceedings. As part of Reynoso's sentence, the Court also imposed a fine of $20,000.

Reynoso appealed his conviction and sentence to the First Circuit and was represented by

new appellate counsel. On appeal, Reynoso argued *inter alia*: (1) that his signed confession should have been suppressed, in part because he was not given Miranda warnings; (2) that Agent Kelleher's expert testimony about personal use of cocaine should have been excluded because of her lack of experience with cocaine users, (3) that the Government adduced no credible evidence that Reynoso supplied the kilogram of cocaine found in Valera's store; and (4) that this Court erred in imposing a two-level sentencing enhancement under U.S.S.G. § 3C1.1. on the basis of his testimony concerning the lack of Miranda warnings and the cocaine being for personal use.

The Court of Appeals rejected all of Reynoso's arguments and affirmed his conviction. United States v. Reynoso, 336 F.3d 46, 46-51 (1st Cir. 2003). The Court of Appeals upheld this Court's denial of the motion to suppress, including its discrediting of Reynoso's version of events given at the suppression hearing. Id. at 49. The Court found that there was sufficient evidence linking Reynoso to the kilogram of cocaine at Valera's store and establishing that the 110 grams of cocaine found in Reynoso's vehicle was for distribution, and it upheld the two-level enhancement for obstruction of justice and this Court's rejection of Reynoso's testimony concerning the Miranda warnings and the purpose of the cocaine found in his vehicle. Id. at 50.

Reynoso's conviction became final when certiorari was denied by the Supreme Court on December 1, 2003. See Reynoso v. United States, 540 U.S. 1062, 124 S.Ct. 841 (2003).

Reynoso subsequently filed the instant § 2255 motion to vacate.[2] In his motion and supporting papers Reynoso claims: (1) that the two-level enhancement of his sentence for

---

[2] Although the docket shows that Reynoso's motion to vacate was received by this Court on December 6, 2004, one year and five days after his conviction became final, the record shows that the motion to vacate and supporting papers were signed on November 29, 2004, which is deemed the filing date for limitations purposes. See Morales-Rivera v. United States, 184 F.3d 109, 110-111 (1st Cir.1999) (recognizing prisoner mail box rule). The Government does not challenge the timeliness of the motion.

obstruction of justice violated Due Process and the holding in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005); and (2) that his trial counsel provided ineffective assistance by: (a) failing to have the tape recording of Valera's March 26 statements introduced into evidence after promising the jury they would hear the tape; (b) failing to present a defense that the cocaine found in Reynoso's vehicle was for his personal use only, including an expert witness to contradict the Government's expert concerning the purpose of that cocaine; and (c) generally failing to develop a defense strategy and to consult with Reynoso in doing so. See Motion to Vacate at ¶ 12; Memorandum of Points and Authorities in Support of Petitioner's Motion to Vacate, Set Aside Conviction, and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Pet. Mem.") at 18-34. Reynoso also claims that he should be relieved from the fine imposed of $20,000, because anticipated income from his business has failed to materialize. Id.

The Government has filed its response objecting to the motion. Reynoso thereafter submitted a "Rebuttal to the Government's Objection" ("Reply") and a Supplemental Response to the Government's Objections ("Supplemental Reply"). The case is ready for decision.[3]

---

[3] Reynoso requests an evidentiary hearing. However, no hearing is required in connection with any issues raised by his motion to vacate, as the files and records of this case conclusively establish that the claims in the petition are without merit, as discussed infra. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1978) (no hearing is required where the district judge is thoroughly familiar with the case).

DISCUSSION

Title 28 U.S.C. §2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255, ¶ 1.

Generally, the grounds justifying relief under §2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See United States v. Addonizio, 442 U.S. 178, 185, 99 S.Ct. 2235 (1979) ("[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.")(internal quotes omitted).

A motion under §2255 is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice"– or, alternatively, that he is "actually innocent" of the offense for which he was convicted. Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604 (1998) (citations omitted). See also Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

With the foregoing principles in mind, the Court reviews Reynoso's claims.

I. Sentencing Enhancement

Reynoso first claims that the two-level enhancement of his sentence for obstruction of justice violated his Due Process and Sixth Amendment rights, because the facts on which it was based were not determined by a jury, in contravention of the Supreme Court's decision in Booker.[4]

This claim may be quickly put to rest. The First Circuit has noted, as have other circuits, that Booker is not retroactive to convictions that were final when that case was decided. See Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005) and cases cited (§ 2255 petitions are unavailable to advance Booker claims in the absence of a Supreme Court decision expressly rendering Booker retroactive); United States v. Fraser, 407 F.3d 9, 11 (1st Cir. 2005) (same). Reynoso's conviction became final when certiorari was denied by the Supreme Court in December 2003, prior to both Booker and Blakely, and thus neither decision is applicable to his claims.[5]

Irrespective of Booker, this claim fails in any event, as the sentencing enhancement was properly applied by this Court pursuant to U.S.S.G. § 3C1.1, and its application upheld by the Court of Appeals. See Reynoso, 336 F.3d at 50. See also Application Note 4(b) to § 3C1.1

---

[4] Reynoso initially cited Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004), in support of this claim but invokes Booker in his supplemental filings. See Reply at 2-4. In any event, "Blakely claims are now viewed through the lens of [Booker]." Cirilo-Munoz v. United States, 404 F.3d 527, 532 (1st Cir. 2005).

[5] Dodd v. United States, 545 U.S. 353, 125 S.Ct. 2478 (2005), invoked by Reynoso in a supplemental filing, is completely irrelevant to his claims. Dodd held that the one-year limitation period for filing a § 2255 motion based on a right newly recognized by the Supreme Court, see § 2255, ¶ 6(3), runs from the date on which the right was initially recognized, not from the date on which the right asserted was made retroactively applicable. That provision is simply not pertinent here, and, as noted above, Booker has not been made retroactive in any event.

(listing perjury as obstructive conduct to which the sentencing enhancement applies). Moreover, the obstruction of justice was found as a sentencing factor, and the fact that perjury was not charged in the indictment does not, contrary to Reynoso's contention, render the enhancement invalid. See United States v. Fox, 393 F.3d 52, 62 (1st Cir. 2004) (rejecting contention that Court may not base sentencing enhancement on perjury, where perjury was not charged in the indictment), judgment vacated for reconsideration in light of Booker, 125 S.Ct. 2949 (2005) (mem.), on remand judgment and sentence re-affirmed, United States v. Fox, 429 F.3d 316 (1st Cir. 2005).

II. Ineffective Assistance Claims

Under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), a defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate two criteria:

(1) That his counsel's performance "fell below an objective standard of reasonableness," and

(2) "[A] reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."

Id., 466 U.S. at 688, 694 125 S.Ct. at 2064, 2068.

The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance. Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice. Dure v. United States, 127 F. Supp.2d 276, 279 (D.R.I. 2001), citing Lema v. United States, 987 F.2d 48, 51-52 (1st Cir.1993).

In assessing the adequacy of counsel's performance:

> [T]he court looks to "prevailing professional norms." . . . A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances. [Citations omitted.]

Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I. 1998), quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688. This means that the defendant must show that counsel's advice was not "within the range of competence demanded of attorney in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369 (1985).

Under the second prong of the Strickland test, a defendant must show actual prejudice. Strickland, 466 U.S. at 693. In other words the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

A. Recorded Conversation between Valera and the DEA Informant

Reynoso claims that his trial counsel was ineffective because he failed to have the tape recording of Valera's statements to the DEA informant concerning his drug dealings introduced into evidence after telling the jury in his opening that they would hear those statements. Reynoso also argues that "counsel's failure was exacerbated" because counsel referred to the taped statement in his closing argument. (Pet. Mem. at 27.) This claim fails for several reasons.

First, contrary to Reynoso's assertions, Attorney Cicilline did not specifically tell the jury that they would hear this tape-recording. The record reveals that while counsel in his opening statement mentioned that in a recorded conversation Valera bragged about having drug deals involving substantial amounts of money, counsel's remarks suggested a prospective challenge to

Valera's credibility rather than assuring the jury they would hear the actual tape recording of that conversation. See Transcript of Jury Trial conducted on October 15, 2001 ("10/15/01 Trial Tr.") at 28.[6]

Second, even assuming that counsel's failure to secure admission into evidence of the tape recording (in view of his failure to produce an accompanying transcript) was deficient, there was no prejudice. Contrary to Reynoso's contention, the tape recorded conversation did not definitively disclaim, or otherwise disprove, Reynoso's participation in Valera's drug dealings – even though Reynoso was not mentioned. Moreover, Attorney Cicilline vigorously cross-examined Valera about his statements concerning other drug deals (after successfully having Valera refresh his memory by listening to the tape in question) and concerning Valera's plea agreement and the promises made to him in exchange for his cooperation – all in an effort to attack Valera's credibility and to show that Valera was the sole drug dealer. Attorney Cicilline's brief mention of the recorded conversation during his final argument, in the course of reminding the jury about Valera's statements, was likewise consistent with counsel's defense strategy.

Because counsel's failure to introduce the tape recording in question did not prejudice Reynoso's defense that Valera was the sole dealer involved in the drug transactions, it did not

---

[6] After describing Valera as a cooperating Government witness, counsel's remarks on this point were as follows:

> . . . But you're going to learn he wasn't truthful. You're going to learn that in the recorded conversations in which he's talking to the Government agent being recorded he's bragging about $150,000 on the street. He's bragging about someone having stiffed him $28,000 for buying two kilos and giving him bad money or fake money. You'll hear all of that. . . .
>
> And so you'll have the opportunity to hear from Benjamin Valera, and you will know after listening to him that he is here reciting the story in order to save his own skin.

10/15/01 Trial Tr. at 28.

constitute ineffective assistance, even if the defense was ultimately unsuccessful. See Strickland, 466 U.S. at 694; Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993) (attorney strategy, even if ultimately not successful, does not constitute ineffective assistance).

B. Alleged Failure to Present "Personal Use" Defense

Reynoso further claims that his counsel did not present a "good-faith theory of defense" on his behalf, presumably with reference to his defense that the cocaine found in his vehicle was for personal use only.[7] He points to Attorney Cicilline's failure: (1) to correct the Pretrial Services Report in which Reynoso denied any personal cocaine use; and (2) to call an expert witness concerning whether the drug quantity found in his vehicle was consistent with personal use. These claims are likewise without merit.

As to his first point, Reynoso does not suggest how his counsel could have corrected the Pretrial Services Report. Even if Attorney Cicilline had obtained an addendum to the report showing Reynoso's prior cocaine use, the inconsistent statement would still exist. Moreover, Reynoso admitted at trial that he denied any prior cocaine use during his interview with the Pretrial Services Officer (see 10/18/01 Trial Tr. at 39-40), and this admission effectively ratifies that statement in the Pretrial Services Report.

As to counsel's failure to call a defense expert, presumably to testify that 110 grams of cocaine was a quantity more consistent with personal use than with distribution, Reynoso does not identify any expert witness. The decision whether to call a defense witness "is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema v.

---

[7] As the Government points out, Reynoso nowhere defines what he means by "good faith conduct theory of defense," and this Court takes the term to refer to his defense that the cocaine found in his vehicle was for personal use only.

United States, 987 F.2d 48, 54 (1st Cir. 1993). Here, Attorney Cicilline could have reasonably concluded that such expert testimony, even assuming he could have obtained it, would not have been substantially helpful to Reynoso. See Reynoso, 336 F.3d at 50 (characterizing the defense of personal use as "implausible"). Moreover, in view of the charge of possessing and distributing over 500 grams of cocaine and the substantial evidence connecting Reynoso to the kilogram of cocaine sold by Valera, counsel's failure to call an expert witness concerning the 110 grams found in his car, even if deficient, was not prejudicial. See id. at 49 (noting that any error in permitting DEA agent to testify as to the 110 grams of cocaine was harmless in light of other evidence connecting defendant to the separate kilogram of cocaine sold by Valera); United States v. McGill, 11 F.3d 223 (1st Cir. 1993)(attorney's failure to present expert defense witness after stating he would do so in opening statement did not constitute ineffective assistance).

C. Defense Strategy and Client Consultation.

Finally, Reynoso's generalized assertion that his counsel lacked a defense strategy and failed to work with him in preparing his defense -- in part due to Reynoso's failure or inability to pay counsel his full fee -- is likewise erroneous. The record shows that Attorney Cicilline filed appropriate motions, including a pretrial motion to suppress, made numerous objections, and conducted vigorous cross-examination at trial. As noted above, counsel's pursuit of a defense based on Reynoso's personal use of cocaine, Valera's credibility and Reynoso's English fluency was reasonable in light of the strong evidence against Reynoso, including his signed statement admitting to possessing cocaine. Moreover, Attorney Cicilline could not have conducted a direct examination of Reynoso, nor have called other defense witnesses without having conferred extensively with his client.

A defendant is entitled to a fair trial and effective assistance of counsel, not a perfect trial and flawless representation. See Prou v. United States,199 F.3d 37, 48 (1st Cir. 1999), citing Scarpa, 38 F.3d at 8. In this case, Reynoso received a fair trial and vigorous representation, notwithstanding that he was convicted.

For the above reasons, this Court finds that Reynoso's ineffective assistance claims cannot prevail.

III. The $20,000 Fine

Reynoso seeks relief from the $20,000 fine imposed by this Court because be contends that his income in the future will not be as high as anticipated at the time of the fine. This claim falls at the outset, as challenges to fines are simply not cognizable in a § 2255 proceeding. See Knight v. United States, 37 F.3d 769 (1st Cir. 1994) (court may not entertain challenges to fine imposed in a § 2255 proceeding, even when raised with custodial claims). See also Smullen v. United States, 94 F.3d 20, 25-26 (1st Cir. 1996) (precluding challenges under § 2255 to allegedly erroneous fine or restitution orders by prisoner, even if in custody at time of relief.); Kaminski v. United States, 339 F.3d 84,87-89 (2d Cir. 2003) (same). Cf. United States v. Michaud, 901 F.2d 5, 7 (1st Cir. 1990) ("A monetary fine is not a sufficient restraint to satisfy "in custody" requirement for § 2255 purposes.").

The denial of this claim is without prejudice to any other remedy available to Reynoso to seek a modification of his fine.

The Court has reviewed Reynoso's other arguments and claims and finds them to be without merit.

## CONCLUSION

In view of the forgoing considerations, the instant motion to vacate sentence pursuant to 28 U.S.C. §2255 is hereby DENIED and dismissed.

So Ordered:

Mary M. Lisi
United States District Judge
July 25, 2006